```
              UNITED STATES DISTRICT COURT
               MIDDLE DISTRICT OF FLORIDA
                    TAMPA DIVISION
```

ADRIAN LUSCO and NATHALIE HOSTIN,

    Plaintiffs,
v.                              Case No. 8:13-cv-420-T-33EAJ

UNIVERSITY REALTY OF TAMPA, ET AL.,

    Defendants.
_____/

**ORDER**

    This cause comes before the Court pursuant to University Realty of Tampa, Inc.'s Second Amended Motion for Summary Judgment as to Plaintiff Lusco's Claims Found in Counts 11, 12, and 14 and Plaintiff Hostin's Claims Found in Counts 17, 18, and 20 (Doc. # 56), which was filed on December 12, 2013. Plaintiffs Adrian Lusco and Nathalie Hostin filed a Response in Opposition to the Motion (Doc. # 59) on December 17, 2013. University filed a Reply (Doc. # 60) on December 30, 2013. For the reasons that follow the Motion is granted.

**I.**   **Background**

    Plaintiffs resided in an apartment in Bavarian Village from October 14, 2004, to January 1, 2008. (Lusco Dep. Doc. # 56-1 at 27-28). The apartment was owned by Andres and Celina Albanese. (Id. at 27). University Realty was the property manager for the property. (Id.). Both Plaintiffs signed a lease agreement and addendums thereto, and both Plaintiffs

identified the lease agreement during their depositions. (Doc. # 56-6; Lusco Dep. Doc. # 56-1 at 28; Hostin Dep. Doc. # 56-2 at 23-25). The 12-month lease agreement, signed by both Plaintiffs on October 14, 2004, is before the Court. (Doc. # 56-6). Among other terms and disclosures, the lease identifies University Realty as "Lessor's Agent" and explains that University Realty owes to the lessor "the fiduciary duties of loyalty, confidentiality, obedience, full disclosure, accounting and the duty to use skill, care and diligence." (Doc. # 56-6 at 3).

Plaintiffs lived in the apartment "as boy-friend and girl-friend" and reached an internal agreement in which Mr. Lusco was "financially responsible" for paying the rent, and Ms. Hostin was responsible for paying the utilities. (Lusco Dep. Doc. # 56-1 at 32-33; Hostin Dep. Doc. # 56-2 at 10). But Mr. Lusco acknowledged that both he and Ms. Hostin were legally responsible for paying the rent under the lease agreement. (Lusco Dep. Doc. # 56-1 at 34).

In 2007, Ms. Hostin lost her employment and all of the bills "were on [Mr. Lusco] for a stretch." (Id. at 35-37). Mr. Lusco's rent checks for August and September of 2007 were returned for insufficient funds. (Id. at 37-46). Mr. Lusco made partial payments when he had the funds, but the "account

2

went to $2,200." (Id. at 47).

On January 2, 2008, Mr. Lusco and Ms. Hostin vacated the apartment (Hostin Dep. Doc. # 56-2 at 13), complaining in a letter that the apartment was not being properly maintained. (Doc. # 56-7 at 1). Plaintiffs described a "crack in the ceiling that allows water from toilet upstairs to leak into [the] apartment," broken closet doors, a clogged garbage disposal, and a broken AC unit. (Id.). Along with this list of grievances, Plaintiffs personally indicated in the same letter that they "appreciate[d] the times [University Realty] ha[s] been supportive in the difficulties of the lives of two Grad students and would like to be able to do business with you somewhere down the line." (Id.). Ms. Hostin testified that this statement in the letter reflected Plaintiffs' acknowledgment that they were late with multiple rent payments. (Hostin Dep. Doc. # 56-2 at 23). Mr. Lusco testified that when Plaintiffs vacated the apartment, he believed "to the best of [his] knowledge" that the rent was paid in full. (Lusco Dep. Doc. # 56-1 at 96).

University Realty did not agree that all rent had been paid, as evidenced by University Realty's retention of Southern Management, a debt collection agency, to collect unpaid sums from Plaintiffs. (Doc. # 56-7 at 5). According

3

to the affidavit of Stephen Lohonen, President of Southern Management, "On or about November 7, 2008 University Realty forwarded to Southern Management's attention what was represented to be a delinquent account in the names of Adrian Lusco and Nathalie Hostin." (Lohonen Aff. Doc. # 56-8 at ¶ 3). In a letter to Southern Management dated December 2, 2008, University Realty indicated, inter alia:

> The amount of $1845 is the correct amount that is owed by Mr. Adrian Lusco. Prior to Mr. Lusco moving out of 14460-#706 Reuter Strasse Circle, Tampa, Florida 33613, I had a conversation with him regarding the large amount of money that was owed. This was due to months skipped not paying rent and checks submitted to our office that were returned due to insufficient funds. Mr. Lusco was fully aware of the amount that he owed.

(Doc. # 56-7 at 5).

Robert Piccirilli, the President of University Realty, explains in an affidavit that University Realty "is a property management company" and "in its management of real estate properties for landlords, University Realty *does* collect rents owed to landlords during the tenancies and *does* supervise the affairs of the tenancies" but *does not* "take upon itself the task of collecting debts or monies owed to our landlords after tenancies are terminated." (Piccirilli Aff. Doc. # 56-9 at ¶¶ 3-6)(emphasis added).

Although University Realty contended that Plaintiffs owed

4

money after the termination of the tenancy, University Realty never contacted either of the Plaintiffs after the termination of the tenancy. (Lusco Dep. Doc. # 56-1 at 96; Hostin Dep. Doc. # 56-2 at 42). Instead, University Realty left all debt collection activities to Southern Management, "a Florida corporation that specializes in debt collection." (Piccirilli Aff. Doc. # 56-9 at ¶ 5).

Between 2009 and 2010, Mr. Lusco ran a credit report and it showed a negative comment from Southern Management. (Lusco Dep. Doc. # 56-1 at 113, 116). Mr. Lusco disputed the negative report online. (Id. at 114). After that, he assumed that the matter had been resolved. (Id. at 116). However, in September of 2012, after moving from apartment to apartment, Plaintiffs applied to begin a tenancy at the Gardens at Cross Creek. (Id. at 98; 106). Plaintiffs were provided a notice in the application process that they would be charged an extra security deposit due to a negative statement on their credit report. (Id.). Plaintiffs did not rent that apartment. (Id. at 99). Plaintiffs allege that it was during that time that they learned that University Realty was claiming back rent in the amount of $1,845. (Id. at 100).

Plaintiffs filed a 17-page, 20-count Complaint on February 14, 2013, naming as Defendants University Realty,

5

Southern Management, Andres Albanese, and Celina Albanese. (Doc. # 1). At this juncture, Southern Management, Andres Albanese, and Celina Albanese have been dismissed from this action. Specifically, on April 8, 2013, Plaintiffs and Southern Management filed a Joint Stipulation for Dismissal with Prejudice indicating that their dispute was "amicably resolved," and the Court accordingly dismissed Southern Management with prejudice on April 9, 2013. (Doc. ## 4, 5). Thereafter, on December 13, 2013, Peter Grilli, Esq., the mediator in this action, reported that Plaintiffs reached a settlement with Andres and Celina Albanese. (Doc. # 57). The Court accordingly dismissed Andres and Celina Albanese from the action on December 16, 2013. (Doc. # 58).

The following counts, asserted by Plaintiffs against University Realty, remain pending: Counts 11 and 17 (for violation of the Florida Consumer Collections Practices Act, Florida Statute § 559.72); Counts 12 and 18 (for violation of the Florida Landlord-Tenant Act, Florida Statute § 83.49); and Counts 14 and 20 (for violation of Fair Debt Collection Practices Act, 15 U.S.C. § 1692). University Realty seeks summary judgment on each pending count.

**II.  Legal Standard**

Summary judgment is appropriate "if the movant shows that

6

there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A factual dispute alone is not enough to defeat a properly pled motion for summary judgment; only the existence of a genuine issue of material fact will preclude a grant of summary judgment. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 247-48 (1986).

An issue is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. <u>Mize v. Jefferson City Bd. of Educ.</u>, 93 F.3d 739, 742 (11th Cir. 1996) (citing <u>Hairston v. Gainesville Sun Publ'g Co.</u>, 9 F.3d 913, 918 (11th Cir. 1993)). A fact is material if it may affect the outcome of the suit under the governing law. <u>Allen v. Tyson Foods, Inc.</u>, 121 F.3d 642, 646 (11th Cir. 1997). The moving party bears the initial burden of showing the court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial. <u>Hickson Corp. v. N. Crossarm Co., Inc.</u>, 357 F.3d 1256, 1260 (11th Cir. 2004) (citing <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986)). "When a moving party has discharged its burden, the non-moving party must then 'go beyond the pleadings,' and by its own affidavits, or by 'depositions,

7

answers to interrogatories, and admissions on file,' designate specific facts showing that there is a genuine issue for trial." Jeffery v. Sarasota White Sox, Inc., 64 F.3d 590, 593-94 (11th Cir. 1995) (citing Celotex, 477 U.S. at 324).

If there is a conflict between the parties' allegations or evidence, the non-moving party's evidence is presumed to be true and all reasonable inferences must be drawn in the non-moving party's favor. Shotz v. City of Plantation, Fla., 344 F.3d 1161, 1164 (11th Cir. 2003). If a reasonable fact finder evaluating the evidence could draw more than one inference from the facts, and if that inference introduces a genuine issue of material fact, the court should not grant summary judgment. Samples ex rel. Samples v. City of Atlanta, 846 F.2d 1328, 1330 (11th Cir. 1988) (citing Augusta Iron & Steel Works, Inc. v. Employers Ins. of Wausau, 835 F.2d 855, 856 (11th Cir. 1988)). However, if the non-movant's response consists of nothing "more than a repetition of his conclusional allegations," summary judgment is not only proper, but required. Morris v. Ross, 663 F.2d 1032, 1034 (11th Cir. 1981), cert. denied, 456 U.S. 1010 (1982).

**III. Analysis**

    **A.  The Fair Debt Collection Practices Act**

The Fair Debt Collection Practices Act was created to prevent abusive debt collection practices. 15 U.S.C. § 1692; Oppenheim v. I.C. Sys., Inc., 627 F.3d 833, 837 (11th Cir. 2010). In order to prevail on a FDCPA claim, Plaintiffs must establish (1) that they are "the object of a collection activity arising from consumer debt;" (2) Defendant is "a debt collector as defined by the FDCPA;" and (3) Defendant has "engaged in an act or omission prohibited by the FDCPA." McCorriston v. L.W.T., Inc., 536 F. Supp. 2d 1268, 1273 (M.D. Fla. 2008). The Court resolves the Motion for Summary Judgment in University Realty's favor after finding that University Realty is not a debt collector under the FDCPA, and therefore, the Court will focus its analysis on this required element.

**B.   Is University Realty a Debt Collector?**

The FDCPA provides the following definition of a "debt collector":

> [A]ny person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. . . . [T]he term includes any creditor who, in the process of collecting his own debts, uses any name other than his own which would indicate that a third person is collecting or attempting to collect such debts. . .

9

> . [S]uch term also includes any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the enforcement of security interests.

15 U.S.C. § 1692a. The statute contains an exemption from the definition of "debt collector," applicable here, for "any person collecting or attempting to collect any debt owed or due or asserted to be owed or due another to the extent such activity is incidental to a bona fide fiduciary obligation." 15 U.S.C. § 1692a(6)(F).

Here, Plaintiffs essentially argue that University Realty is a FDCPA debt collector because Plaintiffs say so. That kind of ipse dixit reasoning does not satisfy Plaintiffs' burden under Rule 56, Fed. R. Civ. P. In support of the Motion for Summary Judgment, the President of University Realty, Mr. Piccirilli, filed an affidavit indicating that, as a property management company, University Realty collects rents owed to landlords during the tenancies, but "[a]t no time does University Realty take upon itself the task of collecting debts or monies owed to our landlords after tenancies are terminated." (Piccirilli Aff. Doc. # 56-9 at ¶ 9). Plaintiffs have not established that University Realty is a "person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is

10

the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6).

In addition, University Realty submits that, as a property management company collecting rental payments during a tenancy under a fiduciary duty to the landlord (the Albaneses), it is not a FDCPA debt collector. University Realty's argument is well supported in law and fact. Under almost identical facts, the court in <u>Reynolds v. Gables Residential Services, Inc.</u>, 428 F. Supp. 2d 1260 (M.D. Fla. 2006), determined that a property manager was not a FDCPA debt collector because such property manager had a fiduciary obligation to collect rents and remit such rental payments to the property owners. The court's succinct analysis applies here with equal force:

> It is clear from an examination of the Lease Agreement and the general relationship between a community manager and property owner that Gables [the property manager] had a fiduciary relationship and obligation to West Park, and/or its owners, to manage the apartment property and collect monthly rent. The rent and fees owed by Reynolds [the tenant plaintiff] to Gables were not in default until they were past due, at which time the past due balance was referred by Gables to a third-party collection agency. Gables not only had a right but indeed a fiduciary obligation to collect rent and corresponding fees from tenants in West Park. The monies due by Reynolds were payable to Gables not

11

>as a debt collector but as Manager of the property. Therefore, this Court finds that Gables is not a debt collector within the meaning of the term in 15 U.S.C. § 1692(a)(6)(F). Reynolds cannot maintain her FDCPA claim against Gables.

Id. at 1264.

Plaintiffs argue that Reynolds does not apply in this case because the only executed copy of the relevant lease agreement is from 2004, which expired after one year. Essentially, Plaintiffs argue that, when they terminated the tenancy in 2008, they were not subject to any lease agreement. However, pursuant to Florida law, the lease became a month to month tenancy, subject to the original lease terms, until the tenancy was terminated. See Hamilton v. Tanner, 962 So. 2d 997, 1001-02 (Fla. 2d DCA 2007)("the tenancy arising from the tenants holding over with the consent of the landlord is presumed to be upon the same covenants and terms as the original lease."); Rosamond v. Mann, 80 So. 2d 317, 319 (Fla. 1955)(same).

Here, the lease document, which both Plaintiffs executed, explained that University Realty owed a fiduciary duty to the property owners (the Albaneses). That relationship exempts University Realty from the FDCPA's definition of a debt collector. However, the Court notes that another recent case

12

has noted that "a property manager may qualify as a debt collector if the main purpose of its relationship with the property owner is to collect a debt." Kirby v. Prof'l Ass'n Mgmt., No. 3:12-cv-697-J-20MCR, 2012 U.S. Dist. LEXIS 162138, at *9 (M.D. Fla. Nov. 9, 2012). "In deciding whether the principal purpose is debt collection, courts have considered 'whether a party has held itself out as a debt collector and also the volume, frequency, pattern, and history of a party's debt collection activity.'" Id. (citing Sanz v. Fernandez, 633 F. Supp. 2d 1356, 1362 (S.D. Fla. 2009)).

In Sanz, the court determined that a plaintiff "adequately alleged" that a property manager was a debt collector under the FDCPA because the property manager advertized debt collection services on its website, the property manager was retained by the property owner after the tenants' account was in default, and because the property manager did not represent that it owed a fiduciary duty to the property owner. Id. at 1362. In contrast, the court in Kirby, at the summary judgment stage, noted that "[p]roperty management companies often fall within the exception of § 1692a(6)(F)" because they collect monies "pursuant to a fiduciary obligation." Kirby, 2012 U.S. Dist. LEXIS 162138, at *11. See also Madura v. Lakebridge Condo. Ass'n, No. 8:07-cv-

13

2274-T-17EAJ, 2009 U.S. Dist. LEXIS 21241, at *8-9 (M.D. Fla. Mar. 3, 2009)("Sentry is a property management company [with] a fiduciary duty to collect both current and past due assessments from members of Lakebridge Condominium Association, as well as other property management duties" and is not a FDCPA debt collector).

In this case, Plaintiffs have not come forward with any evidence tending to show that University Realty's principal purpose is debt collection. Mr. Piccirilli's affidavit statement that University Realty does not collect debts remains uncontroverted. (Piccirilli Aff. Doc. # 56-9 at ¶¶ 3-6). Further, Plaintiffs have not pointed to any website advertisements or other items of proof which could lead the trier of fact to conclude that University Realty is a FDCPA debt collector. Both Plaintiffs testified that, during their tenancy, University Realty allowed partial rental payments, accepted untimely rent payments, and did not evict Plaintiffs even after two rent checks were returned for insufficient funds. When Plaintiffs vacated the apartment, they submitted a letter to University Realty expressing gratitude for the manner in which University Realty treated them as two struggling "Grad students." (Doc. # 56-7 at 1). Importantly, both Plaintiffs specifically acknowledged during their

14

deposition that University Realty never contacted them about past due rent after the tenancy ended. (Lusco Dep. Doc. # 56-1 at 96; Hostin Dep. Doc. # 56-2 at 42).

The Court is under no obligation to plumb the record in search of evidence which may be favorable to Plaintiffs. "It is the obligation of the non-moving party . . . not the Court, to scour the record in search of the evidence that would defeat a motion for summary judgment." Lawrence v. Wal-Mart Stores, Inc., 236 F. Supp. 2d 1314, 1322 (M.D. Fla. 2002). Based on the absence of any evidence of debt collection activity by University Realty and based on the fiduciary relationship University Realty owed to the Albaneses, the Court finds that University Realty is not a FDCPA debt collector. Thus, University Realty is entitled to summary judgment as to Plaintiffs' FDCPA claims (asserted in counts 14 and 20 of the Complaint).

### C. Remaining State Law Claims

The Court has determined that Plaintiffs' federal claims, asserted pursuant to the FDCPA, are subject to summary judgment in favor of University Realty. The Court declines to exercise jurisdiction over Plaintiffs' remaining state law claims. The Eleventh Circuit has explicitly advised that a district court is well within its discretion to dismiss state

law claims once the basis for original federal court jurisdiction no longer exists. Nolin v. Isbell, 207 F.3d 1253, 1258 (11th Cir. 2000); see also Rep. of Panama v. BCCI Holdings (Luxembourg) S.A., 119 F.3d 935, 951 n.26 (11th Cir. 1997)("After dismissing Panama's federal claims against . . . the defendants, the district court correctly dismissed its remaining state law claims."); Rice v. Branigar Org., Inc., 922 F.2d 788, 792 (11th Cir. 1991)(affirming the district court's dismissal without prejudice of state law claims after granting summary judgment as to the federal claims).

The Court accordingly grants University Realty's Motion for Summary Judgment as to Plaintiffs' FDCPA claims and declines to exercise jurisdiction over the remaining state law claims. Those claims are dismissed without prejudice for lack of jurisdiction. See, e.g., Murphy v. Gilmer Cnty., No. 2:11-cv-114-RWS, 2013 U.S. Dist. LEXIS 41058, at *22 (N.D. Ga. Mar. 25, 2013)(dismissing state law claims without prejudice for lack of jurisdiction after granting summary judgment on plaintiff's First Amendment claim, which was the only federal claim asserted in the complaint).

## IV. Conclusion

A party opposing summary judgment must "show specific facts exist that raise a genuine issue for trial." Dietz v.

SmithKline Beecham Corp., 598 F.3d 812, 815 (11th Cir. 2010). "Mere conclusions and unsupported factual allegations are legally insufficient to create a dispute to defeat summary judgment." Bald Mountain Park, Ltd. Oliver, 863 F.2d 1560, 1563 (11th Cir. 1989). And "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." Saltzman v. Bd. of Comm'rs of the N. Broward Hosp. Dist., 239 F. App'x 484, 487 (11th Cir 2007).

University Realty is entitled to summary judgment on Plaintiffs' FDCPA claims because it has negated an essential element of Plaintiffs' claims: that University Realty is a FDCPA debt collector. "Summary Judgment is appropriate where the moving party shows an absence of evidence to support an essential element of the non-moving party's case." Beck v. Prupis, 162 F.3d 1090, 1096 (11th Cir. 1998). Here, summary judgment is warranted as to Plaintiffs' FDCPA claims. The Court declines to exercise jurisdiction over Plaintiffs' remaining state law claims.

Accordingly, it is

**ORDERED, ADJUDGED,** and **DECREED**:

(1) University Realty of Tampa, Inc.'s Second Amended Motion for Summary Judgment as to Plaintiff Lusco's Claims Found

17

in Counts 11, 12, and 14 and Plaintiff Hostin's Claims Found in Counts 17, 18, and 20 (Doc. # 56) is **GRANTED** as to Plaintiffs' FDCPA claims in counts 14 and 20.

(2) The Court declines to exercise jurisdiction over Plaintiffs' remaining state law claims. Those claims are dismissed without prejudice for lack of jurisdiction.

(3) The Clerk is directed to enter judgment in favor of University Realty and against Plaintiffs as to Plaintiffs' FDCPA claims asserted in Complaint counts 14 and 20.

(4) The Clerk is directed to close the case.

**DONE** and **ORDERED** in Chambers in Tampa, Florida, this 21st day of March, 2014.

_____
VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE

Copies:   All Counsel of Record